PHINEAS L. ELY, Successor, &c., Respondent, *v.* THE BOARD OF SUPERVISORS OF NIAGARA COUNTY, Appellants.

*Nuisance—Bawdy House—Destruction by Mob—Recovery against County.*

A house kept as a house of ill-fame or bawdy house, and as a resort for thieves and other disreputable persons, although a common nuisance, and subject to indictment, does not constitute such negligence on the part of the keeper thereof as to prevent a recovery against the county when the same has been destroyed by mob violence.

Appeal from a judgment of the Supreme Court, rendered at General Term in the Eighth District, affirming a judgment entered on a verdict in favor of Maria Moody, the Plaintiff's assignor, for $4,500, rendered on trial at circuit in Niagara county, Hon. Noah Davis presiding.

The action was brought by the said Maria Moody, under the "Act to Provide for compensating Parties whose Property may be destroyed in consequence of Mobs or Riots," passed April 13, 1855, to recover damages for the destruction of two houses and their furniture belonging to her, and situate in the village of Niagara city, in Niagara county. The property was destroyed by fire on the 15th of September, 1865, in consequence of a mob or riot. The owner did not ever, at any time, notify the sheriff of Niagara county of any threat or attempt to destroy the property, or of any facts brought to her knowledge. It was shown that she was not apprised of any such threat or attempt until the destruction had considerably progressed, and that when so apprised she was unlawfully taken into custody by the police, or others acting in concert with the rioters, and confined in the lock-up of the village, where she was detained until after the destruction was complete.

The houses, with the furniture, were kept and maintained by the owner, at the time of their destruction, as bawdy houses, and so had been kept and maintained for a long time previous.

The Defendants, on the trial, offered to show that the houses and

furniture, at the time of their destruction, were kept by the owner, not only as bawdy houses, but also as a resort and rendezvous of thieves, robbers, and murderers, with other facts stated at large in relation to this offer in the opinion. This evidence was rejected, and the Defendants excepted.

There was no evidence tending to show that the destruction of the property was occasioned or in any manner aided, sanctioned, or permitted by the carelessness or negligence of Maria Moody, other than that tending to show the purposes for which the houses were kept, and their character.

Maria Moody assigned the verdict to the present Plaintiff, before the case was heard at the General Term, and he was substituted as Plaintiff by an order of the Court.

SCRUGHAM, J.—The only questions presented by the printed argument of the Appellant, are as to the necessity of notice to the sheriff, and as to the carelessness or negligence of the Plaintiff.

It is not pretended that it was possible for the Plaintiff to give the notice required by the provisions of the act, under which her action is brought, before the destruction of her property was complete ; but it is insisted that, as she did not afterward give the notice, her action cannot be maintained.

The notice which the act requires is not of the injury or destruction of the property, but of the facts brought to the knowledge of the owner, showing any threat or attempt to destroy it ; and the object of requiring it is fully disclosed by the only duty expressed in the act, which its receipt imposes upon the officer to whom it is given, which is, "to take all legal means to protect the property attacked or threatened," a duty impossible of performance after its total destruction.

One of its good effects, if it should be received by the sheriff in time, would be to enable him to arrest the rioters while the riot was progressing ; but this he would not do by virtue of any power conferred by the notice, but under his general authority as a peace officer.

No benefit in this respect, however, could be derived from the

notice after the rioters had dispersed, for the sheriff could not then arrest them without warrant, and the duty of procuring such is no greater upon him than upon the person who gives the notice, or any other citizen having knowledge of the facts.

It was proved on the trial that the houses which were destroyed were kept and maintained by the Plaintiff as bawdy houses at the time of their destruction, and had been so kept for a long time previous thereto; and the Defendants also offered to prove that they were also kept as a resort and rendezvous of thieves, robbers, and murderers; that such and other disorderly and wicked persons were notoriously accustomed to be received, entertained, and harbored in them by the Plaintiff, to the great fear, danger, and apprehension of all the people of the town of Niagara; and that during the night preceding their destruction, divers of the criminal and wicked persons whom the Plaintiff was accustomed to receive and harbor in them, murdered a resident and citizen of the town, in the highway near the houses, while he was in the exercise of his duty as a policeman; and that on the fact of such murder being publicly made known the next morning, and the body being found in the highway, close by the Plaintiff's house, "great exasperation, excitement, and indignation were caused and excited among all the people in said vicinity and town."

The Defendants claim that the exclusion of this testimony by the Court was error, as it was calculated to establish such carelessness or negligence in the Plaintiff as would bar her right to recover against the county.

The 3d section of the act provides that no person shall be entitled to recover against a city or county for the damages sustained by reason of his property being destroyed or injured in consequence of a mob or riot, "if such obstruction or injury was occasioned, or in any manner aided, sanctioned, or permitted by the carelessness or negligence of such person." To keep a bawdy house and place of rendezvous for thieves and murderers is criminal wickedness; but, considered only in reference to the safety of the house and furniture used, it cannot be regarded as carelessness or

negligence; for it is not an act which of itself would naturally cause or contribute to produce the injury or destruction of the property; but it is urged that such a use of a house occasions riot, and "stirs up the virtuous indignation of contiguous society, who injure the property on this account," and therefore that such use of the property is carelessness or negligence, which occasions, or in some manner aids, its destruction or injury.

A house kept as a house of ill-fame, and as a resort for thieves and other disreputable persons, is a public and common nuisance; but the destruction of the building and its furniture is not necessary to its abatement, and is unlawful; so too are riots and mobs.

The keeping of such a house may justly excite the virtuous indignation of persons residing in the neighborhood, but in no manner authorizes or justifies their unlawful acts; nor can it be said that in well-governed communities it occasions riots, or leads to the destruction or injury of the property through the indignation of the public; for this, in such communities, will be kept within lawful bounds by the public authorities, whose duty it is to prevent all riots, and to protect all property from injury by them.

The property of the Plaintiff was not put beyond the pale of the law's protection by her detestable and criminal conduct; she still had the right to expect it, and to rely implicitly upon the zeal and ability of the proper public officers to defend her house and furniture against the unlawful effects of any public indignation her evil practices might provoke.

She was not to assume that the officers would not or could not perform their duty effectually; and therefore, having no reason to fear the injury or destruction of her property by a riot or mob, she was not careless or negligent in not anticipating that such would be the result of the evil use to which she applied the property.

But the carelessness and negligence referred to in the act are such as actually occasion or proximately contribute to the injury or destruction of the property; as the opening of a window and its fire-proof shutters, in a house adjoining one in conflagration at the time, through which burning embers enter and set fire to the house.

In such a case no action could be maintained under this act, although the adjoining house was fired by a mob, for the negligent act of opening the windows and shutters would be considered as occasioning or aiding the destruction of the property. But the conduct of the Plaintiff was not such a cause as would naturally produce or aid in producing the destruction of her property; and its influence in that direction is too remote and uncertain to permit of its being considered such carelessness or negligence as would bar her recovery.

All that her conduct can strictly be claimed to have produced, was local public indignation; and this, lawfully manifested, would not have occasioned, or in any manner aided, in the destruction of her property.

Being misdirected, but not through her agency, it produced the riot, and the violent and unlawful acts of those engaged in it occasioned the injury.

The construction for which the Defendants contend requires the substitution of the words "mob or riot," for the words "destruction or injury," in the 3d section of the act.

That this substitution was not made by the legislature is a sufficient indication that it was not intended the act should be so construed.

The evidence offered was properly rejected, and as that which was received did not establish carelessness or negligence within the meaning of the act, the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.